1 So.2d 697

STATE ex rel. ROSENSTOCK et al. v. DEMOCRATIC MUNICIPAL EXECUTIVE COMMITTEE OF TOWN OF WESTWEGO, PARISH OF JEFFERSON.

No. 36175.

April 2, 1941.

Leo W. McCune, of Gretna, for relators.

Fred A. Middleton, of New Orleans, for respondents.

HIGGINS, Justice.

The candidates for the Democratic nominations for the offices of Mayor, Members of the Board of Aldermen, Town Marshal and Members of the Municipal Executive Committee, respectively, for the Town of Westwego, Parish of Jefferson, Louisiana, in the Democratic Primary Election to be held on April 8, 1941, instituted mandamus proceedings against the Municipal Executive Committee of the Town of Westwego and the individual members thereof, to compel them to perform the ministerial duty of selecting and compiling a list of election commissioners to serve at the polls in the Democratic Primary Election to be held in the Town of Westwego on April 8, 1941, in accordance with law, and particularly the provisions of Act 46 of 1940.

The defendants filed exceptions to the jurisdiction of the court rationae materia and of no cause and no right of action.

The trial judge overruled the jurisdictional plea but sustained the other exceptions and dismissed the suit on the grounds (1) that, in order for a writ of mandamus to issue, the relators must assert plain, unequivocal rights granted by some law or statute; (2) that Act 46 of 1940, the Primary Election Statute, does not provide for the method of drawing and selecting election commissioners by a Municipal Executive Committee, but applies only to Parish Executive Committees; and (3) that relators' petition fails to allege in what manner they might suffer any other injury except the alleged irreparable injury said to have resulted from the committee failing to comply with the law.

The relators applied to this Court for writs of mandamus, certiorari and prohibition, under our supervisory jurisdiction, alleging that they have no adequate remedy by appeal. We granted a rule nisi with a stay order and the respondents, the district judge, and the committee and members thereof have filed a return thereto, and the matter is now before us for review.

In the petition for the writ of mandamus in the district court, it is alleged that the Municipal Executive Committee of the Town of Westwego, Jefferson Parish, Lou-

isiana, in accordance with the provisions of Act 46 of 1940, called the Democratic Primary Election for the purpose of nominating Democratic candidates for the offices of Mayor, Members of the Board of Aldermen, Town Marshal, and the Members of the Municipal Executive Committee of the Town of Westwego, Jefferson Parish, La., to be held on April 8, 1941; that in accordance with the provisions of the law the Executive Municipal Committee met twenty days prior to the date of the election, or on March 19, 1941, at 12 o'clock noon, in the City Hall, at Westwego, in regular session for the purpose of selecting five commissioners from the lists submitted by the candidates, as prospective commissioners, to serve as commissioners of election, or election officials, in the said Primary Election; that the members of the committee arranged the names of the twenty proposed commissioners submitted by the respective candidates, in alphabetical order, and numbered the names from 1 to 20, inclusive; that the committee then produced numbered keno balls corresponding with the number opposite the name of each prospective commissioner, the balls being numbered from 1 to 20, inclusive; that the members of the committee then placed the balls in a wheel or a receptacle of a "goose-neck" type, commonly used in the game of keno; that the chairman of the said committee, who was a candidate to succeed himself, without being blindfolded, proceeded to select five of the numbered balls from the keno wheel or receptacle; that the numbered balls, after having been selected, were compared with the corresponding numbered names on the alphabetical list of prospective commissioners and these five names were ordered certified as commissioners to serve at the polls in the Primary Election; that the drawing of the commissioners was illegal and caused irreparable injury to the petitioners, because the chairman of the committee, instead of some selected person, drew the numbers from the receptacle; that he was not blindfolded as required by law; that the chairman of the committee failed to properly mix the numbers, although he was requested by petitioners to do so; that the selection of the commissioners was made in an irregular and unlawful manner and petitioners were, therefore, "surreptitiously deprived" of their legal rights to have the commissioners selected in a lawful way; that they protested against the method employed by the committee in selecting the commissioners but, despite their protest, additional names were drawn without a thorough mixing of the numbered balls in the receptacle; and that the members of the committee had no discretionary power to substitute their opinion of a fair method to choose commissioners for the mandatory requirements of the law. They prayed that the action of the committee in selecting the commissioners be declared illegal, null and void and that an alternative writ of mandamus issue to the committee and the members thereof, to select and compile the names of the commissioners of election to serve in the primary election on April 8, 1941, in the Town of Westwego, according to law.

In the brief in support of the application to this Court, it is conceded that, according to the last United States census, the Town

of Westwego has slightly less than 5,000 inhabitants.

Respondents first contend that the relators have an adequate remedy by appeal and that the Court of Appeal for the Parish of Orleans has jurisdiction of such an appeal, under Article 7, Section 29 of the Constitution of 1921, and Section 101 of Act 46 of 1940, in the absence of any allegation that the salaries of the offices involved exceed the sum of two thousand dollars. The relators allege that they have no adequate remedy by appeal, because there is not sufficient time to obtain relief by appeal and that they have not been guilty of any delays but have been prompt in the assertion of their rights and, therefore, this Court should exercise its broad supervisory powers and jurisdiction under the Constitution and determine the questions presented at once.

The record shows that the relators have pursued their rights with all possible diligence and have in no way delayed instituting and prosecuting this suit. It is obvious that the remedy of appeal is inadequate, because there is not ample time within which to have the case decided. We shall, therefore, accept and consider the case under our supervisory jurisdiction and powers. Long v. Martin, Chairman of State Central Committee, et al. (In re Gremillion), 194 La. 797, 194 So. 896.

The main issue in the case raised by the respondents is that Act 46 of 1940, the Primary Election Law of this State, and particularly Section 61 thereof, which specifically deals with the method of selecting election commissioners, does not in any way specify or provide how election commissioners shall be selected to serve in the polls in Municipal Primary Elections throughout the State. In making this contention, counsel for the respondents points out that there is a total absence of any reference in the statute as to the selection of commissioners to serve at the polls in Municipal Primary Elections, whether the city or town has more or less than 5,000 inhabitants according to the last United States census. This attorney concedes that certain provisions in Act 46 of 1940 apply to Municipal Primary Elections, and after referring to and analyzing a great many of the one hundred and seven sections of the Act, and particularly those that refer to municipal elections, he quotes Section 61 thereof, which reads as follows:

"Section 61. The primary election herein provided shall be conducted at each polling precinct by five (5) commissioners, of election to be selected as hereinafter provided and who shall be commissioned in each parish by the chairman or the vice chairman of each respective parish committee. The commissioners, alternate commissioners, hereinafter provided for, and watchers shall possess the same qualifications as are required of voters in the ward in which they shall reside and may be selected to serve as commissioners, alternate commissioners or watchers in any precinct of the ward in which they vote. The commissioners shall receive the sum of Five Dollars ($5.00) as compensation for their services and they shall be selected . as follows:

"(a) Each local candidate in each parish of the State may, on or before the 25th day prior to the date of any primary election ordered held in such parish, submit a list of proposed commissioners for each of the precincts in said parish where said candidate is to be voted for. The list shall be legibly written or, by preference, typed, giving the post office address, with the street and number in cities and towns, of each person on said list together with the precinct or poll in the ward or parish in which the proposed commissioner is to serve.

"(b) If there be five (5) or more local candidates in any parish of this State, each said candidate may submit one duly qualified voter to act as commissioner of election in each voting place where said candidate is voted for. If there be three (3) or four (4) local candidates, then each local candidate in each parish may submit the names of two (2) qualified voters to act as commissioners of election for each voting place where said candidate is voted for. If there should be but two (2) local candidates, each local candidate may submit the names of three (3) duly qualified voters to act as commissioners of election for each voting place where said candidate is voted for.

"(c) The respective parish committees in each parish, at 12:00 o'clock, noon, on the 20th day prior to the date on which the primary election is to be held shall be regularly convened, and shall proceed to select from the names furnished by the local candidates as hereinabove provided five (5) commissioners for each voting precinct in the following manner:

"The said Parish Committee shall take the names submitted to it for each precinct by the candidates aforesaid and shall write or typewrite each name so submitted on a separate list for each precinct, in alphabetical order, according to surnames. A number shall then be placed opposite each name, beginning at the top of said list with the number one, and continuing to the end of the list in numerical order. The Secretary of State shall secure and deliver to the Chairman of each Parish Committee a sufficient number of round white objects or balls to constitute one ball for each name on the longest of any of the precinct lists; said balls to be of uniform size and weight, and to have a diameter of not more than one inch, and to be made of celluloid or some other similarly light material; each of said balls shall be plainly numbered, each with a different number, commencing with number one (1). The commissioners for each precinct shall then be drawn, by placing in a wheel or other receptacle of sufficient size to permit the balls to be thoroughly circulated and mixed therein, one numbered ball for each name appearing on the said list of the precinct for which the commissioners are being drawn. The balls shall be well mixed by shaking the receptacle in which they are contained a number of times, and any member of the committee shall have the right to participate in said mixing. After the balls have been thus mixed, the committee shall select a person to draw five of said balls from said wheel or receptacle. The person selected to draw the said five balls from the wheel or receptacle shall be blindfolded at the time

and during the drawing; and the drawing shall be public and in the presence of the committee and such spectators as may desire to be present, and said drawing must be done at the Court House in each parish in the State, and in the City of New Orleans at the Civil District Court. The numbers appearing on the balls so drawn shall be compared with the list of names submitted for the precinct for which the commissioners are being drawn, and the names on said list appearing opposite the numbers so drawn, as shown on said balls, shall be selected as commissioners to serve at said precinct. It shall be the duty of the chairman, vice chairman or some member selected by the committee to announce in a clear and audible voice the names of the five commissioners so selected and the names so selected, where they appear on the list, shall be immediately and publicly circled in ink. The remaining persons whose names appear on said list shall be commissioned as official watchers for said precinct. The balls shall be returned to the wheel after each drawing, and the drawing repeated in the same manner above set forth, until the commissioners and watchers have been selected for each voting precinct in the Parish.

"The Commissioners of election for each precinct shall be drawn separately, that is, one precinct at a time, until the commissioners of election for each precinct in the parish shall have been thus selected. The commissioners of election and watchers shall forthwith be commissioned by the chairman of the Parish Committee, or in case of his failure or inability to act, by the vice chairman.

"Prior to the time of and also at the drawing as herein provided, each candidate submitting a list, or a representative of such candidate, shall have the right to examine said list so as to make certain that the same contains the names of the person or persons whose names were submitted by said candidate, as well as by other candidates.

"(d) In the event that any primary election held to nominate candidates for State offices, district offices and members of Congress there should be no local officers to be nominated at the same time, the respective candidates for the State offices, district offices and members of Congress shall send in to the various Parish Committees the names of one or more duly qualified voters under this Act for each precinct in the parish, as hereinbefore provided for local candidates to do, and the commissioners of election shall be drawn in the same manner from these names, as hereinbefore provided in this Section."

In his brief, he states:

"From the foregoing it will be seen that while Act 46 of 1940 has made provision for the method of procedure for holding municipal elections it has not made any provision for the manner and method of drawing Commissioners of Election. There is no provision in the Act which says that the rules and regulations provided for in Paragraph (c) of Section 61 governing the drawing of Commissioners by Parish Committees shall apply to Municipal Committees. Such a provision even though specifically written into the Act would be

nugatory for the reason that municipal committees cannot follow the rules laid down for the Parish Committees, even though they desire to do so, for the following reasons:

"The Secretary of State under Paragraph (c) Section 61 provides the Chairman of the Parish Committee with a sufficient number of round white objects or balls of uniform size and weight and of a diameter of not more than one inch, made of celluloid or other similar light material, plainly numbered with a different number commencing with number "1". Since there is no duty imposed upon the Secretary of State to furnish Municipal Executive Committees with these 'objects or balls' the Municipal Committees would be without the material necessary to comply with this provision.

"* * * The Courts interpret and construe the law, they are not charged with the duty of making the law. In order to interpret Act 46 of 1940 as contended for by relators this Court would be compelled to judicially amend the Act.

"If the Court should judicially amend the law so as to make paragraph (c) of Sec. 61 apply to Municipal Executive Committees then it would in addition so have to amend the law as to provide that the Secretary of State shall furnish like 'objects or balls' to Municipal Executive Committees, or, it would have to include in its amendment a provision that the Chairman of the Parish Committee upon an application by the Municipal Executive Committee of any municipality located in that particular Parish must lend to the Municipal Executive Committee the 'objects or balls' furnished to the Chairman of the Parish Committee by the Secretary of State. It should also provide a penalty for the failure of the Chairman to so lend the 'objects or balls' to the Municipal Committees. It would in addition have to amend the law so as to provide that in the event there are two municipal elections to be held in the same Parish on the same date that then and in that event one Municipal Committee shall meet at 12 o'clock noon on the 20th day prior to the date on which the primary election is to be held (Paragraph (c) Section 61 with reference to Parish Committees) use the 'objects or balls' supplied by the Chairman of the Parish Committee, and the Executive Committee of the other municipality shall meet, not at *12 o'clock noon* as is provided for in the Statute, but at some other and later time when said Committee may be able to secure the 'objects or balls' used by the first Municipal Committee in drawing its Commissioners.

"It would have also to provide in its judicial amendment some method by which the municipalities can establish priority for the use of said 'objects or balls'.

"The Court will take judicial cognizance of the fact that a municipal election is to be held on April 8th both in the City of Gretna and the Town of Westwego, both municipalities of the Parish of Jefferson. It was therefore manifestly impossible for the Municipal Committee to determine for themselves how to arrange for the use at 12 o'clock noon of the same day of the 'objects or balls' furnished by the Secre-

tary of State to the Chairman of the Parish Committee for the selection of Commissioners to be drawn by the Parish Committee.

"The Court will further have to include in its judicial amendment the following: 'Wherever in Paragraph (c) of Section 61 it is provided that the drawing of Commissioners "must be done at the Court House in each parish in the State" the Municipal Executive Committees shall hold their drawing at the town hall or such other building as is used by the Mayor and Board of Aldermen for holding their municipal meetings', unless the Court should consider that it is reasonable and practical for Municipal Committees to repair to the county seat courthouse for the purpose of drawing their Commissioners. This would require citizens desiring to be present at said drawing to leave their municipalities and attend the drawing at the parish courthouse. If the Court adopt this view in a judicial amendment it will work serious embarrassment to people living, for instance, in the Town of Kenner. They would be compelled, if they desired to witness the drawing of Commissioners, to repair to the courthouse at Gretna, in another municipality, for the purpose of doing so.

"The judicial amendment should further provide that the provision: 'The balls shall be returned to the wheel after each drawing and the drawing repeated in the same manner above set forth, until the Commissioners and watchers have been selected for each voting precinct in the

Parish.', is not incumbent upon Municipal Committees.

"And the judicial amendment should further provide that the statement in paragraph (c) of Section 61:

" 'The commissioners of election and watchers shall forthwith be commissioned by the chairman of the Parish Committee, or in case of his failure or inability to act, by the vice chairman', is to be read:

" 'The Commissioners of election and watchers shall forthwith be commissioned by the Chairman of the Municipal Executive Committee, or in case of his failure or inability to act, by the Vice-Chairman, provided there be a Vice-Chairman of such Municipal Committee, otherwise by the Secretary of said Committee.'

"It is only by a judicial amendment reading into the Act the provisions which we have set forth that paragraph (c) of Section 61 of Act 46 of 1940 can be made to so apply to Municipal Executive Committees so as to make the provisions of the paragraph workable with reference to Municipal Executive Committees."

■■ Counsel for relators concedes that the act and particularly Section 61 thereof does not expressly cover this case, but argues that the Legislature impliedly intended to govern the drawing of commissioners for Municipal Primary Elections, as well as Parish Primary Elections. To give the effect to Section 61 contended for by the relators, it would be necessary for us to add substantially to the provisions of that section of the Act, to make it apply to Municipal

Primary Elections throughout the State. This would not be interpreting the provisions of the statute but would be definitely amending the law by making important and serious additions thereto. While it is the duty of the Court to construe the law where it is ambiguous or uncertain, it has no right or authority to amend it and make it embrace situations on which the provisions of the act are absolutely silent and particularly where the provisions are expressly limited to other specific matters by their very terms. It is, therefore, our view that Section 61 of Act 46 of 1940 is not applicable to the selecting and listing of commissioners of elections to serve at the polls in Municipal Primary Elections.

■ Counsel for the respondents next states that under Section 18 of Act 46 of 1940, the Municipal Executive Committee was fully authorized to adopt rules and regulations for their control not inconsistent with the rules adopted by the State Central Committee or with the Constitution and laws of the United States or the Constitution and laws of this State, and, therefore, the committee had the right to adopt a method for selecting the commissioners which they deemed proper and fair.

The repealing clause of Act 46 of 1940 is section 105 and it reads as follows: "All laws or parts of laws on the same subject matter and all laws or parts of laws in conflict herewith be and the same are hereby repealed * * *." Since Section 61 of the statute is unquestionably silent on the subject of the selecting and compiling of commissioners of election to serve at the polls in Municipal Primary Elections, it

cannot be said that the Legislature of 1940 legislated on that "subject matter." In the absence of any provision in Act 46 of 1940 providing a method by which election commissioners in Municipal Primary Elections shall be selected, it cannot be said that there is any conflict or inconsistency on that "subject matter" with Section 25 of Act 97 of 1922, as amended by Act 110 of 1934 (the previous Primary Election statute), regulating and governing the selection of election commissioners to serve in Municipal Primary Elections. Consequently, Section 25 of Act 97 of 1922, as amended by Act 110 of 1934, insofar as it deals with the subject matter of selecting commissioners of election to serve in Municipal Primary Elections, is still in force and effect. Since Section 25 of that Act, as amended, sets up the procedure through which the Municipal Executive Committee shall select election commissioners in Municipal Primary Elections, the committee was powerless, under Section 18 of Act 46 of 1940, to adopt any rule or regulation contrary to or inconsistent with that method of selecting election commissioners.

In the case of State v. Board of Supervisors of Elections, Parish of Rapides, et al., 186 La. 949-959, 173 So. 726, 729, this Court said: "Under Act No. 97 of 1922, as amended by Act No. 110, of 1934, p. 427, *it was made the duty of party committees, parish and municipal, to select commissioners and watchers to hold primary elections called by them according to the methods specifically prescribed in that act.*" (Italics ours.)

It is, therefore, our view that Section 25 of Act 97 of 1922, as amended by Act 110 of 1934, was not repealed by Act 46 of 1940, but was still in effect and binding upon the Municipal Executive Committee of the Town of Westwego and its individual members in the drawing and selecting of election commissioners to serve in the Democratic Primary Election in the Town of Westwego to be held on April 8, 1941, for the election of the Democratic nominees to the respective offices sought by relators and others.

If the allegations of the relators' petition filed in the district court are proved by competent evidence, which shows that this legal mandatory method was not followed by the Committee and the members thereof in selecting the election commissioners to serve in the Primary of April 8, 1941, in the Town of Westwego, the action of the committee in drawing, selecting and listing of the commissioners must be declared null and void, because the committee had no discretion to substitute a different method of selection.

As the case comes before us on exceptions of no right and no cause of action and we accept the allegations of the petition as being true only for the purpose of considering them, we shall remand the case to the district court to be tried on the merits, as prayed for by the relators.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is annulled and the exceptions of no right and no cause of action are overruled.

It is further ordered that the case be and it is hereby remanded to the district court to be tried on the merits, consistent with the views herein expressed. The costs of this Court are to be paid by the respondents and all other costs are to await the final decision in the case.

O'NIELL, C. J., and LAND, J., absent.