23 So.2d 188

**STATE ex rel. BOWDON v. BLACKMAN et al.**

No. 37922.

June 8, 1945.

Supplemental Opinion June 29, 1945.

Shapiro & Shapiro, A. V. Hundley, J. M. Shevnin, and Vance Thompson, all of Alexandria, for appellant.

John R. Hunter & Son, John H. Mc-Sween, and Julius B. Nachman, all of Alexandria, for respondents-appellees.

ROGERS, Justice.

The relator, W. George Bowdon, and the respondent, Julius A. Blackman, were oppos-

ing candidates for the Democratic nomination for the office of Mayor of the City of Alexandria at a second primary election held on May 15, 1945. According to the returns of the election, the respondent, Julius A. Blackman, received a total of 2,699 votes and the relator, W. George Bowdon, received a total of 2,664 votes, or a majority in favor of the respondent, Julius A. Blackman, of thirty-five votes. The returns of the election were promulgated by the Municipal Democratic Executive Committee for the City of Alexandria on May 19, 1945. On the same day, the Committee adopted a resolution declaring that the respondent, Julius A. Blackman, had received a majority of the votes cast in the election and certifying that he was the duly elected Democratic nominee for the office of Mayor of the City of Alexandria.

On May 21, 1945, the relator, W. George Bowdon, brought this mandamus proceeding against Julius A. Blackman and the Municipal Democratic Executive Committee. The relator in his petition asked, first, for a recount of the votes contained in the ballot boxes in nineteen precincts in Ward One of the Parish of Rapides, within the corporate limits of the City of Alexandria, alleging, on information and belief, that the recount would show relator had received a majority of the votes cast, and that, therefore, he should be declared the Democratic nominee for the office of Mayor of the City of Alexandria. In the alternative, relator, in his petition, asked in the event the recount failed to show he had received a majority of the votes cast, that the election be annulled, alleging that the commissioners and watch-

ers were illegally drawn, thereby depriving relator of all representation at the polls.

The respondent, Julius A. Blackman, filed an exception of no right or cause of action, a plea of estoppel, and an answer to the suit. The respondent, Municipal Democratic Executive Committee, filed an exception of no right or cause of action, misjoinder of parties defendant, a plea of estoppel, and an answer to the suit. The exception of misjoinder was sustained, and the suit of relator was dismissed so far as the Democratic Executive Committee was concerned. The exception of no cause or right of action filed by the respondent, Julius A. Blackman, was overruled. His plea of estoppel was referred to the merits.

The recount, which was ordered by the trial judge as required by paragraph (b), section 86, page 211 of Act No. 46 of 1940, showed that Julius A. Blackman, the respondent, received 2,650 legal votes and that relator, W. George Bowdon, received 2,624 legal votes, or a majority in favor of the respondent, Julius A. Blackman, of twenty-six votes.

After hearing the case on its merits and considering the result of the recount of the votes as demanded by relator, the trial judge rendered a judgment rejecting relator's demands and dismissing his suit. From that judgment the relator has appealed.

■. The law requires us to decide cases of this character within twenty-four hours from the time they are submitted. In compliance with the requirement, we hand down our decree, with reservation of the right to give written reasons therefor. Hunt v.

Sims, 184 La. 679, 167 So. 188, and authorities therein cited.

For the reasons orally assigned and to be set forth in an opinion hereafter to be filed, the judgment herein appealed from is affirmed with costs.

## Supplemental Opinion.

The relator, W. George Bowdon, brought this suit to contest the election in a second or run-off primary of the respondent, Julius A. Blackman, as the Democratic nominee for Mayor of the City of Alexandria. Availing himself of the provisions of paragraph (b), section 86, page 211 of Act No. 46 of 1940, relator asked for a recount of the votes cast at nineteen precincts of Ward One, alleging on information and belief that the recount would show that he was nominated. In the alternative, alleging that the commissioners and watchers were illegally drawn and that he was thereby deprived of representation at the polls, relator asked that the election be annulled and that the respondent, Democratic Executive Committee, be ordered to call and hold an additional primary election to select the Democratic nominee for the office of Mayor of Alexandria.

The respondent, Municipal Democratic Executive Committee, was dismissed from the suit on an exception of misjoinder of parties defendant. The respondent, Julius A. Blackman, filed an exception of no cause or right of action which was overruled. He also filed a plea of estoppel which was referred to the merits. Answering plaintiff's suit, respondent denied that a recount of

the ballots would show that relator had received a majority of the votes cast in the election. He also denied that the commissioners and watchers were illegally drawn. Respondent alleged, on the contrary, that the commissioners and watchers were drawn according to law and were legally qualified to serve at the election. He affirmatively set forth that the election was fairly held, the ballots honestly counted and that the result expressed the will of the electors as to his candidacy.

In the recount 922 ballots were set aside by the parties and referred to the judge. After the judge ruled on the objections to a number of the ballots, the tabulation of the votes as recounted showed that the respondent, Julius A. Blackman, received a majority of twenty-six votes over the relator, W. George Bowdon. After considering the result of the recount and hearing the parties on the other issues involved in the case, the judge rendered a judgment rejecting relator's demands and dismissing his suit. Relator appealed from the judgment.

■ Relator makes no complaint of the rulings of the trial judge on the contested ballots nor does he question the correctness of the recount which was made by the counters appointed by the judge and duly sworn, as provided by paragraph (b), section 86 of Act No. 46 of 1940. Relator's complaint on this appeal arises on his alternative demand for the nullity of the election on the ground that the commissioners and watchers serving at the election were illegally selected, thereby depriving relator of all representation at the polls. Relator's complaint is founded on the fact that the Chairman of the Municipal Democratic Executive Committee selected the commissioners and watchers to serve in the second primary in accordance with the provisions of Section 78 of Act No. 46 of 1940 instead of Section 27 of Act No. 97 of 1922, as amended. Relator contends that Section 78 of Act No. 46 of 1940 does not provide a method of selecting election commissioners by a Municipal Executive Committee, but by Parish Executive Committees. Relator further contends that Section 27 of Act No. 97 of 1922, as amended, is binding upon Municipal Executive Committees in the selection of commissioners and watchers in municipal primary elections, and that, as a consequence, the second or run-off primary election held on May 15, 1945, for the Democratic nomination for Mayor of the City of Alexandria should have been held with the same election officers who served in the first primary election on April 10, 1945. There is no merit in relator's contention.

Section 4 of Article 8 of the Constitution of 1921 directs the Legislature to enact laws to secure fairness in party primary elections, conventions or other methods of naming party candidates. Pursuant to the constitutional mandate, the Legislature enacted Act No. 46 of 1940 providing for the calling, holding, conducting and regulating primary elections by political parties.

Section 78 of Act No. 46 of 1940 prescribes the manner of selecting commissioners and watchers in second primary elections for Governor and other state officers and for Mayor in municipal elections. The statutory provision reads in part, as follows:

"In the event of a second primary for Governor and other State officers * * *, or in the event of a second primary for mayor in municipal elections, the commissioners of election * * * shall be selected as follows: (a) * * * In second primaries for mayor each candidate for mayor shall, at least twenty-one days prior to second primary, submit to the Chairman of the municipal committee * * * five names for each precinct in the municipality, of persons to act as Commissioners and Watchers in said primary. * * * On the fourteenth day preceding the date of said second primary, the respective chairman, vice-chairman or acting chairman of the respective parish committees throughout the State or the corresponding officers of the municipal committee in case of a second primary for mayor, shall meet at the court house, in each parish * * * and shall proceed to select the commissioners from said list submitted by the respective candidates for Governor, or mayor as the case may be as follows, to-wit: * * *." Then follows in great detail the manner in which the commissioners shall be drawn and selected and the watchers appointed. Paragraph (f) of section 78 of Act No. 46 of 1940 sets forth the procedure for selecting commissioners and watchers if only one candidate for Governor or Mayor submits a list for the second primary.

Section 78 of Act No. 46 of 1940 expressly prescribes the method for drawing and selecting commissioners and watchers by the chairman of the Municipal Executive Committee in second primaries for the nomination of Mayor.

It is not disputed that in this case the commissioners and watchers were selected and drawn by the chairman of the Municipal Executive Committee in strict compliance with the provisions of Section 78 of Act No. 46 of 1940, and that the persons so selected were legally qualified to serve at the second primary election.

Relator argues, however, that Section 78 of Act No. 46 of 1940 does not provide the method for drawing and selecting election commissioners by Municipal Executive Committees, but only by Parish Executive Committees and that Section 27 of Act No. 97 of 1922, as amended, is the statutory provision governing Municipal Executive Committees in drawing and selecting commissioners and watchers in primary elections.

In support of the argument, respondent relies on the decision of this Court in the recent case of State ex rel. Rosenstock v. The Democratic Executive Committee of the Town of Westwego, 197 La. 469, 1 So. 2d 697. But the decision in that case does not support relator's contention. The question presented for decision in the Rosenstock case involved a first primary election for mayor, while in this case the question presented concerns a second primary election for Mayor. In the Rosenstock case, the Court had before it for consideration Section 61 of Act No. 46 of 1940 and held that inasmuch as the section was silent as to the manner of selecting commissioners to serve in municipal primary elections, the section was not in conflict or inconsistent with Section 25 of Act No. 97 of 1922, as amended, regulating the selection of the commissioners in such elections and, there-

fore, the provisions of the latter section were binding upon the Municipal Executive Committee of the Town of Westwego in the drawing and selecting of commissioners to serve in the primary election referred to in that case. But, as we have pointed out, the election involved in the Rosenstock case was a first primary election and not a second primary election. Section 61 of Act No. 46 of 1940 and Section 25 of Act No. 97 of 1922, as amended, refer to first primary elections. Section 78 of Act No. 46 of 1940 refers to second primary elections. The corresponding section in Act No. 97 of 1922, as amended, is Section 27 and not Section 25, which was under consideration in the Rosenstock case. And since Section 78 of Act No. 46 of 1940 is in conflict and inconsistent with Section 27 of Act No. 97 of 1922, as amended, it must be considered as repealed and under the provisions of Section 105, the repealing clause of Act No. 46 of 1940.

As provided by paragraph (c) of Section 78 of Act No. 46 of 1940, it is only in primary elections other than those for Governor or Mayor that the commissioners and watchers who serve in the first primary election are required to serve in the second primary election. In second primary elections held for Governor or for Mayor, the commissioners and watchers must be selected as provided in the remaining paragraphs of Section 78 of Act No. 46 of 1940, as was done in this case.

Relator contends that under Section 78 the authority to issue commissions to commissioners and watchers in primary elections is conferred on the chairman of parish committees and not on the chairman of municipal committees, and, hence, the issuance of such commissions by the chairman of the Municipal Executive Committee in this case was illegal and vitiated the election, which the court should annul.

A careful reading of all of the provisions of Act No. 46 of 1940 discloses that it was the intention of the Legislature in adopting the statute to place the entire control of municipal primary elections under the Municipal Executive Committees of the party calling the election. Section 5 of the act declares that political parties shall be controlled and directed by the committees which are created by the act. Paragraph (i) of the section creates a municipal committee for each city, town and village in the State. Section 16 provides for the election of members of the committees and defines their qualifications. Section 18 authorizes the committees to adopt the necessary rules and regulations for their government. Sections 24 and 25 authorize Municipal Executive Committees to call and order the holding of primary elections for the purpose of nominating municipal officers. Other sections of the statute prescribe the duties of municipal committees in providing ballot boxes, distributing ballots, supplies and cards of instruction to the commissioners serving at each polling place. Section 75 specifically provides for the filing of the returns of election with the municipal committees and Section 76 provides for the tabulation and promulgation of those returns by the committees. Section 78, as we have shown, expressly provides for the method of drawing and selecting commissioners and watch-

ers to serve in second primaries for mayor by the chairman of the Municipal Executive Committee, and it would seem, therefore, that the authority thus conferred upon the chairman of the committee would necessarily include the further authority to issue commissions to the commissioners and watchers selected by him.

 It is not disputed that relator did not submit to the chairman of the Municipal Executive Committee twenty-one days prior to the second primary, or at any other time prior thereto, as required by paragraph (a) of Section 78 of Act No. 46 of 1940, five names of persons to act as commissioners and watchers in each precinct of the municipality. But relator complains that he was not notified the commissioners and watchers would be selected on May 1, 1945, and as a result thereof he was not present and did not have any representative present when the selection was made. Under the terms of the statute, it was the duty of relator, as one of the candidates in the election, to submit a list of persons to serve as election officials. The date and place for the selection of the election officials is fixed by the statute. The statute does not require the chairman or any other officer of the committee to notify a candidate to submit a list of names from which the election officials are to be selected or to be present or to have representatives present when the selection is made. It is the candidate's responsibility to submit the list of names, and he can not evade it on the ground of lack of notice, as he is charged with knowledge of the laws governing the election in which he is a candidate.

A consideration of the record as a whole forces the conclusion that the alleged illegality of the selection of the election officials did not suggest itself to relator until the election was held and the tabulation of the votes showed that his opponent was nominated. Relator received a list of the election officials drawn to serve in the second primary thirteen days prior to the date on which the election was held. The proces verbal prepared by the chairman of the Municipal Executive Committee showing the selection and names of election officials was published in the daily newspaper of Alexandria nine days prior to the election. If relator were not satisfied with the election officials selected to conduct the election, he had ample time to avail himself of the remedy provided by law to contest their selection. He not only failed to do this, but through his campaign manager addressed a letter to the chairman of the Municipal Executive Committee on May 9, 1945, approving the selection of the commissioners and watchers, in the following words, to-wit: "I am familiar with the character of the commissioners chosen for this election, and know that they will perform their duties honestly and conscientiously."

 It was incumbent upon relator as a candidate in the second primary, if he thought that the commissioners and watchers had been improperly selected, to proceed summarily under the provisions of Section 101 of Act No. 46 of 1940 to correct the irregularity and to enforce the application of the proper law. He could not withhold his protest until the election determined whether he or his opponent received a majority of

the votes cast, accepting the nomination if successful and instituting suit to annul the election if unsuccessful. The legal principle that prevents such action upon the part of an unsuccessful candidate is specifically set forth in the text of American Jurisprudence, Volume 18, Section 280, page 364, as follows: "A candidate may estop himself from contesting an election for irregularity, where he has consented to, or in fact been responsible for, it. Also, if he fails to obviate an irregularity by invoking a statutory remedy which he may use prior to election, he cannot afterward complain." There is no contention on relator's part that the chairman of the Municipal Executive Committee did not honestly and fairly, upon the advice of counsel, proceed to complete his duties in connection with the primary election called by his committee for the selection of the Democratic nominee for Mayor of Alexandria, and it is not disputed that the commissioners and watchers selected by the chairman of the Municipal Executive Committee were honest and efficient in the discharge of their duties. Relator does not complain of any fraud or irregularity in the conduct of the second primary election itself. In fact it appears to be undisputed that the votes were fairly cast and honestly counted and that the result expressed the will of the electors.

The law requires us to decide cases of this nature within twenty-four hours from the time they are submitted. We did so in this case, assigning at the time oral reasons with the right reserved to later assign written reasons.

For convenience, we repeat the decree handed down, to-wit: "For the reasons orally assigned and to be set forth in an opinion hereafter to be filed, the judgment herein appealed from is affirmed with costs."