86 So.2d 192 (1956)
229 La. 556
STATE ex rel. Fred S. LE BLANC
v.
DEMOCRATIC STATE CENTRAL COMMITTEE et al. and
STATE ex rel. Dave L. PEARCE
v.
DEMOCRATIC STATE CENTRAL COMMITTEE et al.
Nos. 42804, 42805.
Supreme Court of Louisiana.
February 20, 1956.
*193 Fred S. LeBlanc, Atty. Gen., pro se and A. Leon Hebert, Ashton L. Stewart, Baton Rouge, for relators.
Rufus D. Hayes, Jack P. F. Gremillion, Baton Rouge, Camille F. Gravel, Jr., Alexandria, Edmund M. Reggie, Crowley, G. Dupre Litton, N. Cleburn Dalton, William C. Bradley, Baton Rouge, for respondents.
SIMON, Justice.
Relators, Fred S. LeBlanc, Attorney General of the State of Louisiana, and Dave L. Pearce, Commissioner of Agriculture and Immigration, seeking re-election to their respective offices, qualified for nomination by the Democratic Party in the gubernatorial primary election held throughout the State of Louisiana on January 17, 1956, for which offices neither candidate had received a majority of the votes cast, and when the Democratic State Central Committee by its resolution of February 1, 1956, declared Jack P. F. Gremillion and Sidney J. McCrory as the party nominees for the offices of Attorney General and Commissioner of Agriculture and Immigration, respectively, each having received a plurality of the votes cast as reflected by the official promulgation of the returns of said election duly certified by Hon. Wade O. Martin, Secretary of State, each on the day following, February 2, 1956, instituted identical proceedings in the Nineteenth Judicial District Court, Parish of East Baton Rouge, and secured a rule nisi directed to the Democratic State Central Committee through its chairman, Rufus D. Hayes, and its secretary, Jesse L. Webb, Sr., Wade O. Martin, Jr., Secretary of State, Jack P. F. Gremillion and Sidney J. McCrory, commanding them to show cause (1) why a preliminary injunction should not issue prohibiting each of them from acting upon said resolution and (2) why alternative writs of mandamus should not issue compelling them to provide a second primary for the respective offices claimed by each. Pending the trial of said rules, which were made returnable on Tuesday, February 7, 1956, the district court issued a temporary restraining order.
*194 The relators, nevertheless, on Sunday, February 5, 1956, applied to this court for writs of certiorari, prohibition and mandamus, averring that a timely adjudication of the issues involved in this suit by the lower court and on appeal would be impossible if the mandatory laws of this state with respect to the printing and distribution of official ballots by the Secretary of State for absentee voting[1] and the preparation of voting machines to be used were to be observed and followed. On the following day the respondents joined relators in their application, imploring us to exercise our supervisory jurisdiction in granting an immediate hearing. Whereupon this court, because of the exigencies of this case, followed its action adopted in the case of Long v. Martin, 194 La. 797, 194 So. 896, relaxing its general rule that it will not exercise its supervisory jurisdiction over other courts without first requiring the complainant to make his defense in the other courts and there exhausting his remedies, and accordingly granted the writs, fixing the same for hearing on the following day.[2]
On the date of the hearing, the respondents in each case filed exceptions (1) to the jurisdiction of the court ratione materiae, (2) of no cause and no right of action, and (3) an answer.[3]
These cases, presenting identical issues, were consolidated for argument and disposed of by decree handed down on February 7, 1956, 229 La. 549, 86 So.2d 189; 229 La. 555, 86 So.2d 191, maintaining respondents' exception of no cause of action and dismissing relators' suits.
Respondents' pleadings shall be grouped into one for the purpose of disposing of the issues presented, all being founded upon the law of the casethat is, that under our Primary Election Law when a candidate for the office of governor receives a majority of the votes cast, there is no provision authorizing a second primary for lesser state offices, and where no majority is received by any candidate for said lesser offices, the respective candidates therefor receiving a plurality of the votes cast must be declared the Democratic nominees by the Democratic State Central Committee and their names officially certified to the Secretary of State to be printed on the official ballots in the general election.
The Legislature of this state, in pursuance to the mandate of the LSA-Constitution of 1921, Article 8, § 4, commanding it to enact laws securing fairness in primary elections, conventions or other methods of naming party nominees, adopted Act 97 of 1922, commonly known as our Primary Election Law. This statute, though amended and re-enacted[4] with some changes, in most instances grammatical and not pertinent here and which in themselves in no way alter the legal meaning and interpretation to be placed thereon, remains substantially the law as preserved and reenacted, after meticulous scrutiny by the Legislature, into the Revised Statutes of this state as LSA-R.S. 18:356.
The applicable sections of our Revised Statutes pertinent to this case manifestly and patently show that there is no provision in our law requiring the Democratic State Central Committee to call a *195 second primary for lesser state offices, the respective candidates for which have failed to receive a majority of the votes cast, in the event a candidate for governor receives a majority of the votes cast for that office in the first primary.
The applicable and pertinent sections heretofore referred to read as follows:
"Tabulation and compilation of returns; promulgation; certification of candidates; preservation of tally sheets
"Immediately upon receipt, the Secretary of State shall tabulate and compile the returns in all elections for United States Senators, Congressmen, and state officers voted for throughout the entire state and respective congressional and supreme court districts, or for any other state board or commission, or for any state officer whose election is provided by law, and shall promulgate them in the official journal of the state within eight days after the date of the primary. He shall forward at the same time, by special delivery, a certified copy thereof, under his signature and seal of office, to the chairmen or secretaries of the respective committees ordering the elections, which shall be the official tabulation of the returns of the elections except when contested as provided for in this Part. Immediately upon receipt of the certification from the Secretary of State, the chairman or secretary of each of the committees to whom the returns have been forwarded shall convene his committee for the purpose of declaring the nomination of the persons shown by the certification of the Secretary of State to have received the greatest number of votes. They shall certify the names of the persons to the Secretary of State.
"In all other primary elections the returns shall be tabulated and compiled by the respective committees ordering the primaries and the results thereof certified to the Secretary of State. The chairman of the committee, immediately upon receiving the returns, shall open them and cause them to be tabulated and compiled, and at twelve o'clock noon on the fourth day after the primary, the committee ordering it shall convene at the same place and the chairman thereof shall submit to it the tabulated statement showing the result of the primary and the original returns received by him. * * *" LSA-R.S. 18:355. (Italics ours.)
"Second primary for governor and other state officers; place and date; expenses
"If no candidate for the office of governor should have received a majority of the votes cast for that office, a second primary shall be held for governor and for all other state officers the candidates for which have failed to receive a majority of the votes cast for the office for which they were respectively candidates. The second primary shall be held at the same places as the first primary five weeks from the date of the first primary. However, if this day falls on Mardi Gras the second primary shall be held six weeks from the date of the first primary. The expenses of the second primary shall be borne in the same manner as those of the first primary." LSA-R.S. 18:356. (Italics ours.)
"Commissioners at second primary; selection; appointment and commission; list of commissioners and watchers; delivery of ballot boxes and other supplies; alternate commissioners
"In a second primary for governor and other state officers nominated at the same time that a governor is nominated, or in a second primary for mayor in municipal elections, the commissioners who conduct the second primary are selected as follows:
"(1) In second primaries for governor, each candidate for governor shall, at least twenty-one days prior to the second primary, submit to the chairman of each respective parish committee the names of five persons for each precinct in the parish, to act as commissioners and watchers at the primary. * * *

* * * * * *
"(3) In all other second primaries held under the provisions of this Part, the same commissioners and alternate commissioners or watchers who served in the first primary serve in the second. No commissioner or watcher who has been appointed *196 and served as a commissioner in the first primary and who is required to serve in a second shall fail to serve unless he is incapacitated.
"Whoever violates this last provision shall be punished as provided in R.S. 18:369. * * *" LSA-R.S. 18:357. (Italics ours.)
"Second primary for local officers; place and date; number of candidates; tie vote; failure to elect or death or withdrawal of candidate.
"After the committee has met and proclaimed the results as provided in this Part, if any candidate has failed to receive a majority of the votes cast for the office for which he was a candidate, except in cases wherein under the provisions of this Part a plurality of votes nominates, a second primary shall be held with the same election officers and at the same places as the second primary for the state officers and United States Senators or Representatives in Congress. If there is no second primary for state officers or United States Senator or Representative or if the first primary is held at a time when neither state officers nor United States Senators or Representatives shall be voted for, the second primary shall be held five weeks from the date of the first primary. If this day falls on Mardi Gras, the second primary is held six weeks from the date of the first." LSA-R.S. 18:358.
In saying that a second primary for lesser state offices shall be held only when there is a second primary for the office of governor, it is significant that Section 18:356 provides as a condition precedent to the calling of a second primary for all other lesser state offices the failure of a candidate for governor to have received a majority in the first primary. Omitting this conditional clause, the language of this section would read:
"* * * a second primary shall be held for governor and for all other state officers the candidates for which have failed to receive a majority of the votes cast for the office for which they were respectively candidates. * * *" (Italics ours.)
It is crystal clear, therefore, that when a candidate for the office of governor, as in the instant case, has received a majority of the votes cast for that office, the condition under which a second primary can be called for lesser state officers who have not received a majority of the votes cast in the first primary is not present; and the ordering of a second primary for such lesser state officers is without legal basis or statutory authority.
Relators contend, however, that, under the provisions of Section 18:356 when read together with the provisions of Section 18:358, it is the ministerial duty of the respondent Democratic State Central Committee to order a second primary for all lesser state offices for which no candidate received a majority of the votes cast in the first primary, and in support thereof rely on the language used in Section 18:358 to the effect that after the committee has met and proclaimed the results and any candidate has failed to receive a majority of the votes cast for the office for which he was a candidate, "* * * a second primary shall be held with the same election officers and at the same places as the second primary for the state officers * * *."
A studied analysis of these two sections, LSA-R.S. 18:356 and LSA-R.S. 18:358, supra, together with the provisions of the other two pertinent sections, LSA-R.S. 18:355 and LSA-R.S. 18:357, supra, clearly demonstrates the error of relators.
LSA-R.S. 18:358 is clearly inapplicable and not controlling in the present controversy. The Louisiana Revised Statutes of 1950, adopted as Act 2 of the Extraordinary Session of 1950 and published and distributed by the Secretary of State under the Authority and Seal of the State of Louisiana and containing in part the afore-quoted sections, clearly indicates that Section 18:358 by its very caption, carried in heavy black type, applies only to second primaries for local offices, and that Section 18:356 by its like pronounced caption applies solely and exclusively to a second primary for governor and other state officers. Counsel for relators argue that the caption *197 forms no part of the statute. Conceding for the moment the correctness of this contention, it cannot be questioned that the caption preceding each of these sections, when placed thereon by the Law Institute of this state and subsequently adopted by the Legislature as proposed, Act 2 of the Extraordinary Session of 1950, made crystal clear the particular applicability thereof.
The Louisiana Law Institute, its membership named and appointed by the Legislature and composed of our most eminent educators and lawyers, charged with the Herculean task of compiling, revising and correlating our statutory law, submitted its meritorious projet, which was enacted by the Legislature in its entirety as Act 2 of the Extraordinary Session of 1950. To hold otherwise would be tantamount to saying that the Law Institute and the Legislature, by the use of these captions did not intend to say what the words so clearly and unmistakably express.
At its very outset, Section 18:358, providing that the committee shall meet and proclaim the results, makes self-evident that such action applies to committees ordering the primaries for local offices. Under Section 18:355 the duty of compiling and promulgating the returns in all elections for the state officers is vested exclusively in the Secretary of State and not in the Democratic State Central Committee. Upon receipt of the certification from the Secretary of State, it devolves upon the Democratic State Central Committee to convene and by appropriate action declare the Democratic nominees for state offices. We have further observed that under the second paragraph of LSA-R.S. 18:355 it is provided that in "all other primary elections", unquestionably referring to offices other than state offices, "the returns shall be tabulated and compiled by the respective committees ordering the primaries and the results thereof certified to the Secretary of State."
Furthermore, the first paragraph of LSA-R.S. 18:358 provides that a second primary shall be held with the same election officers and at the same places as the second primary for state officers, and if there be no second primary for state officers, or if the first primary is held at a time when neither state officers shall be voted for, the second primary shall be held 5 weeks from the date of the first primary.
It is manifest, therefore, that there is no conflict between LSA-R.S. 18:356, which applies exclusively to state officers, and LSA-R.S. 18:358, which is applicable only to local officers.
It is a fundamental principle of statutory construction that in the interpretation of a statute its meaning must be sought in the language employed, and if such language be plain it is the duty of the courts to enforce the law as written. When the provisions of our Primary Election Law were embodied in our LSA-Revised Statutes, they stood on a parity with each other, incorporated in one single Act adopted by the Legislature, and this being so it would be impossible to hold that one provision had the effect of repealing the other. Chappuis v. Reggie, 222 La. 35, 62 So.2d 92; Babineaux v. Lacobie, 222 La. 45, 62 So.2d 95; State ex rel. Fudickar v. Heard, 223 La. 127, 65 So.2d 112; Guillot v. Nunez, 225 La. 301, 72 So.2d 513.
In State ex rel. Fudickar v. Heard, supra, in determining the intention of the Legislature with respect to statutes which had been re-enacted as part of the Revised Statutes, it was contended that we should consult the original acts for the purpose of ascertaining whether or not one of the statutes in contest had been repeated by the other. We rejected this argument, and with Chief Justice Fournet as its author stated [223 La. 127, 65 So.2d 114]:
"It is to be remembered that the Revised Statutes constitute a single act of the Legislature, adopted as a whole; different sections should be regarded not as separate acts, but as simultaneous expressions of the legislative will, and all provisions should be construed together and reconciled whenever possible. In adopting the Revised Statutes of 1950, the Legislature incorporated both LSA-R.S. 42:371 and 42:373, giving equal dignity to each: we must take them as written, *198 and not search through the history of the acts carried into the Revised Statutes for defects, when a reading of the sections, disassociated from their history, presents no insuperable difficulty of construction."
The extraordinary writ of mandamus is expressly defined in the Code of Practice to be "an order issued in the name of the State by a tribunal of competent jurisdiction, an address to an individual or corporation, or court of inferior jurisdiction, directing it to perform some certain act belonging to the place, duty or quality with which it is clothed." Art. 829.
Our jurisprudence has unwaveringly adhered to the doctrine that such a writ lies only to compel the performance of duties that are purely ministerial in nature, duties which are so clear and specific that no element of discretion can be exercised in their performance. When such acts or duties necessarily call for the exercise of judgment and discretion by the officer or body at whose hands their performance is required, this remedy will not avail a complainant. State ex rel. Daboval v. Police Jury, 39 La.Ann. 759, 2 So. 305; Badger v. City of New Orleans, 49 La.Ann. 804, 21 So. 870, 37 L.R.A. 540; Houeye v. St. Helena Parish School Board, 213 La. 807, 35 So.2d 739.
It is a well settled and established principle of law that in the absence of constitutional or statutory prohibition all elections and nominations as well as other matters relating to or affecting the same are governed by political parties and are, therefore, beyond judicial control. This doctrine was clearly announced in the case of Reid v. Brunot, 153 La. 490, 96 So. 43. In that case we took cognizance of the doctrine that political rights being defined to be rights exercisable in the administration of government and being opposed to civil rights which broadly comprehended all rights accorded to every member, such political right is not a natural right but exists, if at all, in the Constitution or statutes. 29 C.J.S., Elections, § 261.
In Long v. Martin, supra [194 La. 797, 194 So. 899], with the late Chief Justice O'Niell as the organ of the court, we said:
"If the executive committee of a political party, in rescinding the nomination of a party candidate and in nominating another candidate in his place, does not commit a fraud or violate any prohibitory law, the courts have no authority to question the wisdom of the committee's action; nor has the disappointed candidate any cause or right to complain." (Italics ours.)
The above enunciated principles are not peculiar to Louisiana, as they have their counterparts pronounced in other jurisdictions. Smith v. McQueen, 232 Ala. 90, 166 So. 788; Bullard v. Culpepper, 190 Ga. 848, 11 S.E.2d 19; Hooper v. Almand, 196 Ga. 52, 25 S.E.2d 778; Daly v. Madison County, 378 Ill. 357, 38 N.E.2d 160; Smith v. Howard, 275 Ky. 165, 120 S.W.2d 1040; Repsold v. Independent School District No. 8, 205 Minn. 316, 285 N.W. 827; Cloutier v. State Milk Control Board, 92 N.H. 199, 28 A.2d 554.
Section 7 of Act 46 of 1940, now LSA-R.S. 18:287, provides:
"When it is necessary by law to elect or select a party nominee for any of the recognized political parties and this Part does not make provision therefor, the state central committee may provide for the election or selection of the nominee." (Italics ours.)
We necessarily conclude, for the reasons heretofore stated, that nowhere in our Revised Statutes pertinent to our Primary Election Laws, does there exist any provision commanding and requiring the Democratic State Central Committee the ministerial duty of ordering a second primary for the election of lesser state offices, where a candidate for the office of governor, as is shown here, has received a majority of the votes cast at the first primary election. It is also indisputable that there is no express law prohibiting the Democratic State Central Committee from adopting the resolution declaring respondents to be the Democratic nominees for their respective offices, and in the absence of fraud or prohibitory *199 law, the exception of no cause of action filed by respondents should be sustained.
HAMITER, Justice (concurring).
The source of our present primary election law, LSA-R.S. 18:281 et seq., is Act 46 of 1940.
The first paragraph of Section 20 of that statute directed the State Central Committee to meet in appropriate years and issue a call for a first primary election to nominate a candidate for governor and candidates for the lesser state offices running at the same time (referred to hereafter as "state officers"), the election to be held on the third Tuesday of January.
With reference to a second primary election for the nomination of a governor and the other "state officers", Section 77 mandatorily provided: "In case no candidates for the office of Governor should have received a majority of the votes cast for that office, then a second primary election shall be held for Governor and for all other State officers the candidates for which shall have failed to receive a majority of the votes cast for the office for which they were respectively candidates and the second primary shall be held at the same places as the first primary was held, five weeks from the date of the first primary; provided, that if this day should fall on Mardi Gras, then the second primary shall be held six weeks from the date of the first primary. * * *" (Italics mine.)
And Section 79 recited: "If for any reason, there is no second primary to nominate a candidate for Governor, there shall be no second primary election for State Officers who ran in the first primary, but the person receiving a plurality of the votes cast for the office for which he was a candidate shall be declared to be the nominee of the party holding said primary." (Italics mine.)
Under the specific provisions of the last quoted section the State Central Committee was expressly prohibited from calling a second primary election for "state officers" if for any reason there resulted from the first primary a nominee for governor (for example, if a candidate for the latter office received a majority of the votes cast or one of the two "top" candidates therefor withdrew).
Section 79 was repealed by Act 60 of 1944, while the other mentioned sections were carried into the Revised Statutes (without any material changes) and are now in full force and effect.
The repeal of Section 79 occasioned merely the removal of its prohibitory provisions from the primary election law. Undeniably, the repeal, in view of the language of such section, did not have and could not have had the effect of requiring the holding of a second primary for "state officers".
As a consequence of the repeal of Section 79 the only provisions remaining in the law that relate to the holding of a second primary for the nomination of "state officers" are those contained in Section 77 (above quoted, and now LSA-R.S. 18:356. But such provisions, unlike those of Section 20 which are unqualified in directing the holding of a first primary for the nomination of "state officers", require a second primary "If no candidate for the office of governor should have received a majority of the votes cast for that office".
Accordingly, the statute is silent as to any specific procedure to be followed in the election of nominees for "state officers" when, as in these cases, a candidate for the office of governor receives a majority vote in the first primary.
However, provision has been made by the lawmakers for such an eventuality. Section 7 of the 1940 statute, which is now LSA-R.S. 18:287, states: "In the event it is necessary by law to elect or select a party nominee for any of the recognized political parties, and this Act does not make provision therefor, then the State Central Committee, as herein created, shall be and is hereby fully authorized to provide for the election or selection of such nominee." Thus, in a situation such as that with which we are presently confronted the State Central Committee is vested with wide discretion in making the selection of party nominees, the *200 law not having specifically set forth the procedure for choosing them.
Therefore, with respect to the matter under consideration, the Democratic State Central Committee had complete authority either to call a second primary election or to declare (as it did in these cases) that each of the candidates for "state officers" who received a plurality of the votes in the first primary would be a party nominee.
For the success of these actions relators rely entirely on that portion of Section 80 of the statute (now LSA-R.S. 18:358) which recites that if the Committee finds that "any candidate has failed to receive a majority of the votes cast * * * a second primary shall be held * * *." But the section further states that such "second primary shall be held with the same election officers and at the same places as the second primary for State Officers * * *; if there be no second primary for State Officers * * * then the second primary shall be held five weeks from the date of the first primary * * *." This last quoted language, particularly in view of Sections 77 and 79 which specifically dealt with the matter of second primaries for "state officers", makes it clear that the Legislature intended the provisions of Section 80 to apply to the nomination of officials other than governor and "state officers".
I concur in the decrees.
McCALEB, Justice (concurring).
I am in accord with the result reached in these cases but, since my views are somewhat different from those expressed in the main opinion, I deem it appropriate to briefly state them.
R.S. 18:355, 18:356, 18:357 and 18:358, which are quoted in the majority opinion, are counterparts of Sections 76, 77, 78 and 80 of Act 46 of 1940, formerly the Primary Election Law, which was placed in the Revised Statutes as Chapter 2 of Title 18, Sections 281-382. That Act specifically provided by Section 79 that there would not be a second primary for State Officers[1] in the event a candidate for Governor was nominated in the first primary and the other sections of the Act, especially those involved herein, were couched in terms conforming to that provision.
In 1944, the Legislature attempted to change the law providing for nomination of a State Officer by plurality in case there was no second primary for Governor and, to effectuate this purpose, Section 79 of Act 46 of 1940 was repealed by Act 60 of 1944. However, it is manifest to me that the repeal of Section 79 did not accomplish the desired object for it left untouched all of the other sections of the Act pertaining to the holding of second primaries which sections, as I have above pointed out, were worded so as to be in keeping with the original purpose of the Act, i. e., that candidates for State offices would be nominated by plurality in case a second primary for the nomination of a candidate for Governor was unnecessary. Consequently, since there is no provision contained in the applicable sections of the Revised Statutes which make it mandatory for the State Central Committee to hold a second primary, the courts are without power to coerce it to do so.
On the other hand, I cannot subscribe to the opinion of the majority that the provisions of R.S. 18:358 (formerly Section 80 of Act 46 of 1940) apply only to the holding of second primaries for local officers and I think the Louisiana Law Institute committed error in attempting to thus limit the scope of the section in its caption.[2] Indeed, it takes no more than a casual inspection of R.S. 18:355, 18:356, 18:357 and 18:358 to perceive that the latter section applies to the holding of second primaries for all officers (State, District and Local) save only those State Officers who are voted on throughout the State and are nominated *201 at the same time as a candidate for Governor. The reason why those State Officers are necessarily excluded from R.S. 18:358 is that they are specifically included in R.S. 18:356 and 18:357, providing for a second primary for Governor and other State Officers and the method of holding such primary. But, surely, second primaries for all other State Officers[3] and District Officers[4] are plainly covered by R.S. 18:358 and the caption thereof, indicating that it is restricted to Local Officers, is obviously not in conformity with its provisions.
I concur in the result.
NOTES
[1] Act 61, Extra Session of 1921, now LSA-R.S. 18:1071 et seq., wherein the Secretary of State is required to furnish the clerks of court of the district courts of the respective parishes and the civil sheriff of the Parish of Orleans, fifteen days prior to a special primary or general election, a sufficient number of printed ballots for each precinct in the parish for absentee voting.
[2] In State ex rel. Rosenstock v. Democratic Municipal Executive Committee of Town of Westwego, Parish of Jefferson, 197 La. 469, 1 So.2d 697, involving a mandamus proceeding to compel the committee to comply with a provision of our Primary Election Law, and it being obvious that the remedy of appeal would prove inadequate, due to the time limit for final adjudication, we therein exercised our supervisory jurisdiction.
[3] Respondents Gremillion and McCrory also filed individually an exception of misjoinder of parties defendant, which was neither argued nor presented in their brief, and which we have considered as waived.
[4] Act 46 of 1940.
[1] As used in the statute, the term "State Officers" is obviously limited to those officers who run statewide in the same primary election at which a candidate for Governor is nominated.
[2] The marginal caption of Section 80 of Act 46 of 1940 reads simply "Second primaries" thus covering all such primaries except second primary elections for Governor and other State Officers.
[3] Supreme Court Justices, Public Service Commissioners and others whose jurisdiction is statewide.
[4] Judges of the Courts of Appeal (see McCall v. Regan, 214 La. 254, 36 So.2d 830) State Tax Collectors and the like (see State ex rel. Carbajal v. Looney, 154 La. 457, 97 So. 657).