PER CURIAM.
Plaintiff, Hugh Lasseigne, alleging he is a properly registered voter and duly qualified elector of the Democratic Party who desires to qualify as a candidate for party nomination to the office of Governor in the forthcoming Democratic Primary called to be held on November 4, 1967, filed this action for injunction and mandamus against the Honorable Wade O. Martin, Jr., Secretary of State and Edward M. Carmouche, Chairman, Democratic State Central Committee. Specifically, plaintiff seeks to prevent the Committee from charging allegedly excessive and illegal fees to candidates wishing to qualify and particularly in the aforesaid party primary. In the prayer of his petition, plaintiff asks that Secretary of State be enjoined from proceeding with the preparation of ballots for the coming primary election until the courts have passed upon the validity of the qualifying fees imposed by the Committee. Plaintiff further requests that the Committee be ordered to permit him to qualify for the aforesaid office upon the payment to the Committee of such sum as the court shall determine to be legal and proper.
The trial judge rejected plaintiffs demands upon finding that the amount charged ($600.00) was not excessive or illegal but that the Committee was required to account to candidates for the fees charged. Plaintiff appealed the adverse ruling to the Supreme Court which tribunal in a decision rendered August 28, 1967, La., 202 So.2d 247, transferred the appeal to this court upon the finding that the subject matter did not come within any of the classes of cases in which appellate jurisdiction is vested in the Supreme Court pursuant to Art. 7, § 10, Paragraphs (1) through (5) inclusive.
*252 The essential facts generating this suit are not in dispute and may be summarized as follows: On Saturday, August 5, 1967, the Committee met in Baton Rouge, Louisiana, and issued a call for a party primary to be held on November 4, 1967, to nominate Democratic Candidates for the office of governor and certain other state offices. Upon the Committee setting a qualifying fee of $600.00 for persons desiring to qualify as candidates for nomination to the office of governor, plaintiff, being unable to pay said qualifying fee instituted suit in the trial court to determine the legality of the qualifying fee set by the Committee. Subsequent to the filing of the instant suit plaintiff formally tendered qualifying papers together with the sum of $100.00 to the Chairman, Mr. Carmouche, within the time for qualifying as fixed by law. The Chairman declined to accept the tendered documents and deposit on the ground that the sum of $100.00 offered by plaintiff was less than the sum set by the Committee.
Defendants excepted to plaintiff’s petition on the ground that the courts lacked jurisdiction ratione materiae which exception is predicated on the dual contention that the question before the court is political and therefore not justiciable and that the Committee having acted, the issue has become moot. Further exception was made to the plaintiff’s petition on the ground that it failed to name an indispensable party, namely, the Committee, this position being based on the premise that only the Chairman was named party defendant.
A final exception of no right of action and no cause of action, alleging certain deficiencies in the petition, such as failure of plaintiff to allege he possesses the qualifications required of a candidate for the office involved, was also filed by defendants.
The district judge rendered judgment herein on the merits and his written reasons for judgment are silent as to these exceptions. Accordingly, we view them as having been overruled and inasmuch as appel-lees reurge the same before us, we shall treat them separately.
Defendant’s exception to the jurisdiction of the court ratione materiae, based on the proposition that the issue involved is political and therefore beyond the purview of judicial review, is without merit. In disposing of this matter on the merits, defendant again raises the same question and at that point in this opinion we will discuss said 'issue in detail. It suffices at this juncture to state albeit the matter is political the courts of this state are specifically vested with both constitutional and statutory authority to review same. LSA-R.S. 18:381.
Appellees’ exceptions of no right and no cause of action are based on dual contentions, namely: (1) plaintiff’s reputed failure to allege plaintiff possessed certain requisite qualifications to become a candidate and make additional representations such as never having been a communist as required by the primary election law; and, (2) that plaintiff wants relief for which he has not prayed, inasmuch as plaintiff in effect wished to be declared a Democratic nominee for the office but has neglected to ask therefor.
Plaintiff’s alleged failure to affirmatively plead certain requirements for candidacy was cured by oral amendment of plaintiff’s petition permitted by the court below when this matter was tried on the merits.
The argument that plaintiff seeks relief for which he has not prayed is based on the ruling in Bauer v. Gilmore, La.App., 165 So. 739. The Bauer Case, supra, arose following a primary election to nominate two candidates for the office of State Representative. In the primary three candidates received a majority of votes cast. Of the three, the Committee declared the candidate having the largest number of votes nominated and ordered a second primary between the remaining two, namely Bauer *253 and Gilmore. Bauer, having received a total of 177 votes more than Gilmore, filed suit praying that the court decree him a nominee.
In dismissing the action on an exception of no cause of action the court in effect held that it was powerless to grant plaintiff the relief sought since only the Committee could promulgate election returns and certify to the secretary of state the name of a party nominee. Since the court could not grant the relief sought, it concluded it was without power to grant plaintiff any relief whatsoever.
We find the Bauer Case supra, clearly distinguishable from the case at hand. Here plaintiff is not asking that the Committee be mandamused to certify him as a nominee but rather that the Committee be compelled to accept his application and determine his qualifications to participate in the forthcoming primary. This is a duty incumbent upon the Committee and one which only the Committee can perform and discharge. In effect plaintiff alleges the Committee has arbitrarily and unlawfully declined to discharge its mandatory duty in this regard. If plaintiff’s contention is correct he is clearly entitled to the relief sought.
Appellees’ exception of failure to join an indispensable party defendant is based on the argument that whereas relief is sought against the Committee, the Committee itself is not made a party to these proceedings.
Appellant’s prayer asked that the Committee be enjoined from imposing a qualifying fee of $600.00 and that it be directed to permit his qualification as a candidate for governor upon his paying a fee of $100.00 or such larger sum as the Court may determine to be legal.
While we believe the petition herein is somewhat loosely drawn, nevertheless, the import thereof, viewed in light of the present day rule of liberal interpretation, evidences intent to make the Committee a party defendant.
In Paragraph 4 of his petition, plaintiff asserts Carmouche, a resident of Calcasieu Parish, is Chairman of the Committee which is the governing authority of the State Democratic Party and as Chairman authorized to stand in judgment on behalf of the Committee. It is also asserted the Committee is a legal corporation within the meaning of the primary election law.
Paragraph 5 of the petition alternatively maintains that if the Committee is found not to be a corporation as alleged in Paragraph 4, the Committee is an unincorporated association within the scope of LSA-C.C.P. Art. 738, the venue of an action against which is fixed by LSA-C.C.P. Art. 42(3) as the place where its principal business establishment is located and that the Committee’s principal establishment is the Parish of East Baton Rouge where it meets.
In subsequent paragraphs plaintiff asserts the Committee met August 5, 1967 and illegally fixed a qualifying fee of $600.00 which arbitrary and capricious action by the Committee violates Article 8, § 4 of the State Constitution and aggrieves plaintiff.
Granted the pleadings do not use the word “defendant” in referring to the Committee, all the actions complained of are attributed to the Committee in its official capacity.
That the committee may impose the payment of fees as a condition precedent to qualification as candidate in a party primary to nominate a candidate for the .office of governor is settled beyond question. Our Primary Election Law, LSA-R.S. 18:310(A) expressly provides that candidates for the office of governor shall deposit with the Committee Chairman the sum of $100.00 as evidence of good faith (presumably of intention to become a bona fide candidate). This deposit is returned to the candidate if he is disqualified upon *254 proper objection, otherwise it is forwarded by the Committee to the Secretary of State along with the candidate’s qualification papers. See LSA-R.S. 18.310(D).
In addition to the foregoing fee a state central committee may exact of a candidate for governor an additional fee or deposit of $110.00' to be used to defray expenses of the Committee. LSA-R.S. 18 :- 311(E).
Predicated on the foregoing statutory provisions appellant contends the Committee may not lawfully require of a candidate for the office of governor a deposit in excess of $210.00.
The Committee, however, maintains its authority to impose fees, in addition to those specified in LSA-R.S. 18:310 and 311, is contained in LSA-R.S. 18:314, which governs payment of expenses incurred in primary elections and which reads as follows :
“The expenses of primary elections held under this Part are apportioned and defrayed as follows:
(1) The expense of printing ballots and the furnishing of the necessary stationery and other election supplies for all primary elections held under the provisions of this Part, except as hereinafter otherwise provided, and also all expenses necessary to the transmission and promulgation of the returns, are paid by the state, in the same manner as for general elections.
(2) The necessary expenses incidental to the holding and conducting of the primary elections, such as payment of commissioners, rent of polling places, and expense of delivery of ballot boxes and supplies to and from the polling places, are borne by the respective parishes and municipalities. The respective gpverning authorities shall provide by ordinance for their payment.
(3) Any other actual expenses necessary and incidental to the calling and holding of the primary are borne by the candidates participating therein.”
Relying on the provisions of Paragraph (3) of the hereinabove cited statute, the Committee asserts it is within its rights in assessing such additional sums as it shall determine to be necessary to defray the expenses of conducting the primary and that it has determined a total deposit in the sum of $600.00 is required in this instance.
, Defendant's principal argument is to the effect that elections and all matters related or incident thereto are political rights which are beyond the purview of the judiciary excepting only those instances where the courts are constitutionally or statutorily authorized to intervene. In support of this contention respondents cite and rely upon State ex rel. LeBlanc v. Democratic State Central Committee, 229 La. 556, 86 So.2d 192; Reid v. Brunot, 153 La. 490, 96 So. 43; Caswell v. Hoft, La.App., 119 So.2d 864.
The general power of state legislatures to control and regulate elections and all matters incident thereto is set forth in 25 Am.Jur. 1 Verbo Elections, Page 697, Par. 6, the pertinent portion of which we quote with approval as follows:
“Subject to constitutional restrictions, each state has the right to define the qualifications of its voters, and to regulate the manner of ascertaining an elector’s qualifications. Furthermore, the state legislatures have the power to regulate the manner of conducting elections, to prescribe the form of the official ballot, to provide for the manner in which candidates shall be chosen and the names that shall be printed on the ballot as the result of a primary, and in the exercise of the police power, the state may act to suppress whatever evils may be incident to a primary election or convention for the designation of candidates for election to public office. In fact, especially if the state constitution so requires, the duty is imposed on legislatures to enact *255 such laws as will secure the proper and honest conduct of elections, both in determining whether those voting possess the necessary qualifications and in securing a proper count and return. The legislature may institute and conduct investigations of elections for the purpose of securing information for use in the enactment of regulative legislation or for determining the validity of the election of its members. Some powers with respect to elections may be conferred on the controlling committees of political parties.
Although the right of electors to an opportunity to vote for candidates of any political party may be restricted by the legislature according to the dictates of common sense, and by considerations of convenience in the size of the ballot, and of the excessive costs, such restrictions will not be upheld where they are destructive of freedom of choice by the voters.”
Regarding judicial review of disputes within political parties the universal rule is that such matters are not cognizable by the courts in the absence of constitutional or statutory authorization. In such cases, judicial review exists only to the extent jurisdiction has been conferred by statute, or the subject matter has been regulated by law, or a legal right has been conferred by previous party action. Where there is no controlling statute or clear legal right involved, th'e courts will not intervene in factional controversies involving political parties.
However, where the matter in dispute is controlled by legislation, and the question is whether there has been a violation of a statute, or where otherwise a clear legal right is shown, controversies within a political party are subject to judicial hearing and determination. Under such circumstances the courts will take jurisdiction of controversies concerning the membership or status of committees, party organizations, or nomination for public office. See 25 Am. Jur., Paragraph 126, page 811.
The majority of jurisdictions apply the rule that legislative requirement of reasonable fees intended to defray the costs of the election process, is proper. It appears, however, there is some disagreement as to what constitutes “reasonable fees”. Nevertheless most jurisdictions agree, that fees which bear no relation to the services rendered candidates in filing their applications or the expenses incident to legitimate party procedure, and are purely arbitrary requirements of money to be paid the party machinery for the privilege of becoming a candidate, are invalid. Am. Jur. Vol. 25, Verbo Elections, Page 879, Paragraph 182.
By clear and express mandate, the constitution of this state imposes upon the legislature the unmistakable duty of adopting laws designed to secure fairness in primary elections, conventions or other methods of naming party nominees. LSA-Constitution of 1921, Art. 8, § 4; State ex rel. Pearce v. Democratic State Central Committee, 229 La. 556, 86 So.2d 192.
In obedience to the foregoing constitutional directive, the legislature enacted Act 97 of 1922, the first primary election law. Perusal of this initial statute discloses it provided expressly for judicial review only in the case of a candidate claiming nomination. See Section 27, of Act 97 of 1922.
In a general revision and updating of the primary' election law the legislature enacted Act 46 of 1940, which contained, inter alia, Section 101, reading as follows:
“Unless otherwise herein provided, jurisdiction is hereby conferred upon the courts of this State to issue writs of injunction or mandamus or any other remedial writ to enforce any provisions of this Act. Any candidate has a right and an interest to appeal to the courts for the enforcement of any provisions *256 of this Act and all proceedings taken to enforce the provisions of this Act shall be summary and same shall be tried by preference and before all or any other proceedings.”
The provision for judicial review incorporated into Act 46 of 1940, was retained by the legislature upon adoption of the Revised Statutes of 1950, inasmuch as LSA-R.S. 18:381 thereof reads :
“Unless otherwise provided in this Part, the courts of this state may issue writs of injunction or mandamus or any other remedial writ to enforce any provisions of this Part. Any candidate may appeal to the courts for the enforcement of any provisions of this Part. All proceedings to enforce the provisions of this Part shall be summary and shall be tried by preference and before any other proceedings.”
It seems abundantly clear, therefore the legislature of this state has long since provided for judicial review in matters relating to party primaries when the activities involved are provided for and regulated by law. Nor do we believe that State ex rel. Pearce v. Democratic' State Central Committee, supra, relied upon by defendant is decisive of the matter before us. The cited authority dealt with an election contest as such (we note that in transferring this appeal to us the Supreme Court has held this is , not an election contest). While the Supreme Court did in the cited authority reiterate the general rule that in the absence of statutory or constitutional authority, the courts will not intervene in matters politic, its decision was not based on this premise but rather that the situation presented was expressly controlled by provisions of the primary election law which dispensed with a second primary for lesser state offices when a candidate for governor was nominated in the first primary. The decision made no mention of LSA-R.S. 18:-381. In fact our perusal of each of the cases cited by defendants, discloses, that in no instance has the court considered the terms of LSA-R.S. 18:381.
We hold, therefore, that under the clear, unambiguous terms of LSA-R.S. 18 :- 381, the courts are vested with authority to entertain appeals to enforce all requirements and regulations of the Primary Election Law.
For obvious reasons elections and all processes incidental thereto, including the nomination of party candidates for office, must be maintained free, uninhibited and open for all to participate, subject only to reasonable regulations designed to insure that the foregoing basic considerations shall ever be protected and preserved. The very existence of a democratic form of government demands that these principles be jealously guarded. Where standards or norms are set up by the legislature for the guidance of political parties in the conduct of those aspects of the elective process entrusted to them by law, such regulations are to be followed literally. Where there are no guides, political parties may pursue such practices as they elect provided the course of action does not violate constitutional rights.
In the case at bar, we note that two sections of the pertinent act provide for deposit by candidates. Section 310 provides for a deposit of $100,000 and prescribes the disposition thereof. Section 311 (E) confers authority to impose an additional fee of $110.00 and sets forth the manner of its disbursement. In addition, counsel for appellees cite Sections 293 and 294 which empower the Committee to fix salaries of certain officers and for the payment of certain expenses and Section 311(E) which is in the nature of an omnibus clause provides that actual expenses of elections other than those provided for in Section 314(1) and (2) shall be paid by the candidates. Accordingly, appellees contend that the Committee has discretionary authority to require additional assessments to cover the above mentioned *257 expenses as a condition to a candidate’s qualification.
We cannot subscribe to this argument in view of the clear and express terms of Section 311 (E), which in our opinion limit the financial obligation of the candidates while at the same time prescribes the source of the Committee’s revenue. To hold otherwise would conclude that the legislature granted to the Committee complete discretion which in turn would render the provisions of Section 311 (E) meaningless.
For the above and foregoing reasons the judgment of the district court is reversed and it is hereby ordered, adjudged and decreed that plaintiff Hugh B. Lasseigne be and he is hereby given and granted until the hour of 5:00 P.M. Central Daylight Time, Wednesday, September 6, 1967, to file his application for candidate for party nomination to the office of governor in the Democratic Party Primary called to be held November 4, 1967, said application to be accompanied by a deposit of $210.00 in full payment of all qualifying fees provided for by law.
It is further ordered, adjudged and decreed that the defendant, the Democratic State Central Committee, through its Chairman, the Honorable Edward M. Carmouche, be and the same is hereby enjoined, directed, ordered and required to receive the qualifying papers of said Hugh P. Las-seigne, if filed in accordance with this decree and process same according to law.
It is further ordered, adjudged and decreed that the Honorable Wade O. Martin, Jr., Secretary of State, State of Louisiana, be and he is hereby enjoined and prohibited from taking any further steps or performing any further acts in the preparation of ballots or other election paraphernalia or materials in connection with the forthcoming Democratic Gubernatorial Primary called to be held November 4, 1967; this injunction to remain in full force and effect until the hour of 5:00 P.M. Central Daylight Saving Time, Friday, September 8, 1967, or until such time as the Committee shall take definitive actions on plaintiff’s application whichever occurs first.
Costs of these proceedings are to be borne by the defendant, Democratic State" Central Committee.
Reversed and rendered.