486 So.2d 1145 (1986)
John K. SNYDER, Plaintiff-Appellee,
v.
ALEXANDRIA CITY COUNCIL, et al., Defendants-Appellants.
No. 86-222.
Court of Appeal of Louisiana, Third Circuit.
April 3, 1986.
*1146 Humphries & Humphries, Guy E. Humphries, Jr., Garrett, Ryland & Nunnally, Charles Nunnally, III, Alexandria, for defendants-appellants.
Eugene P. Cicardo, Sr., Alexandria, for plaintiff-appellee.
Before GUIDRY, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
John K. Snyder, Mayor of the City of Alexandria, seeking to be reinstated to his office after a temporary absence, and having been refused a hearing before the Alexandria City Council for a determination of his reinstatement, sought and obtained from the Ninth Judicial District Court for the Parish of Rapides a writ of mandamus, directed to the City Council, ordering it to meet and consider his request for reinstatement. The City Council appealed the mandamus. Because of the public importance of the question presented by the appeal, we granted a request for an expedited hearing.
FACTS
John K. Snyder is the elected mayor of Alexandria. He was elected in 1982 for a four year term. On February 3, 1986, he was involuntarily committed to the Veteran's Administration Hospital in Shreveport, Louisiana.
The City of Alexandria is governed by a Home Rule Charter, Section 3-05 of which reads as follows:
"(A) During the temporary absence from the city or temporary inability of the mayor to perform the duties of his office, the mayor, by letter filed with the city clerk, may designate the president of the council as acting mayor, provided the temporary absence or inability does not exceed seventy-two (72) hours.
"(B) When such temporary absence or inability of the mayor exceeds seventy-two (72) hours, the city council, by two-thirds (2/3) vote of its membership, shall so certify and designate the president of the council as acting mayor. When the absence or disability is terminated, the council by two-thirds (2/3) vote shall so certify and the mayor shall resume his duties."
Pursuant to Subsection (B) above, the City Council held a special meeting on February 6, 1986, and designated Marion Chaney, the then President of the Council, Acting Mayor.
On February 14, 1986, Snyder was discharged from the hospital and he returned to Alexandria. By a letter dated February 19, he notified the City Council and its President to place on the agenda for consideration at its upcoming February 25 regular meeting, his request to return to his *1147 duties as Mayor. In this letter, Snyder declared that he had been released from the hospital and that he was under no treatment for any lingering disability. This letter was followed by another, on February 24, enclosing a letter from his treating physician, Dr. Ali G. Surek, in which the doctor stated that Mr. Snyder was able to return to his full duties as Mayor.
The Council did not grant Mr. Snyder's request to put his reinstatement on the agenda. Nor did it consider the matter of his reinstatement at its meeting on February 25, despite the presence and urgings of Snyder's attorney that it do so. The reason why the Council refused to take action was because the item had not been properly placed on the agenda, according to the Council's brief before this court. Although the Council did not take action on February 25, the Acting President ordered that the request be placed on the "pre-council agenda" of March 4, for consideration at that time of whether it would be placed on some subsequent regular meeting agenda.
THE MANDAMUS PROCEEDING
Snyder immediately filed an application in the district court for a writ of mandamus. On March 3, after a hearing, the court granted the application, and ordered the Council to hold a meeting within 48 hours for the purpose of considering Snyder's request to be reinstated in his duties as Mayor. The specific language of the order was that the Council "hold within 48 hours from 11:40 A.M., March 3, 1986, a meeting to determine whether or not to reinstate John Snyder as Mayor of the City of Alexandria." This is the ruling which the Council has suspensively appealed.
THE APPEAL
The City Council in this appeal argues that the reinstatement of Snyder as Mayor is a purely discretionary matter for it to decide, and that the district court, whose authority of mandamus is limited to ordering the performance of purely ministerial duties, was wrong in ordering a Council meeting for consideration of reinstatement. An alternative argument presented by the Council is that even if mandamus lies in cases when a public body is guilty of an abuse of discretion, the Council here was not guilty of an abuse of discretion when it refused to consider the matter of the reinstatement. Finally, the Council argues that, to the extent the pertinent charter provisions defining its duties are vague or uncertain in their meaning, the doctrine of contemporaneous construction requires that the courts interpret these doubtful provisions as the Council has.
DECISION
We affirm the action of the trial court.
The remedy of mandamus can be employed as a writ directing a public officer to perform a ministerial duty required by law. La.C.C.P. arts. 3861 and 3863. It issues where there is a clear and specific right to be enforced or a duty which ought to be performed. See Comments to C.C.P. art. 3863. It issues where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La.C.C.P. art. 3862.
Duties that are purely ministerial in nature are those which are so clear and specific that no element of discretion can be exercised in their performance. State v. Democratic State Central Committee, 229 La.556, 86 So.2d 192 (1956). Webster's defines "ministerial" as "relating to or being an act done after ascertaining the existence of a specified state of facts in obedience to a legal order without exercise of personal judgment or discretion."
The precise duty involved in the present case is the duty outlined in Section 3-05(B) of the Home Rule Charter of the City of Alexandria. The city charter provides the powers and functions of the government of Alexandria. La.Const. 1974, Article VI, Section 5(E). The City Council is charged with both legislative and executive functions in the government of the city under the charter. Enforcement of Charter Section 3-05(B) is one of its executive functions. We find, as did the trial judge, that the duty of the Council to meet, consider and decide whether the absence or *1148 disability of the Mayor was terminated, is ministerial in nature.
The purpose of Section 3-05 is clear. It is to ensure an orderly procedure for maintaining the leadership in the government of Alexandria should its Mayor become temporarily absent or unable to perform his duties. Provision is made for when the temporary absence or disability is 72 hours in duration or less, and provision is also made for when such temporary absence or disability exceeds 72 hours. When the temporary absence or inability does not exceed 72 hours, Subsection (A) leaves it to the mayor's discretion whether to designate the president of the Council as acting mayor for that interval. Once the temporary absence or inability exceeds 72 hours, however, only the Council has the power to designate the acting mayor. Moreover, the designation of the Council president as acting mayor becomes the mandatory duty of the City Council, the only condition to the exercise of that power and duty being that the Council must certify by two-thirds vote of its membership that there is in fact a temporary absence or inability of the Mayor which has exceeded 72 hours. The Charter does not tell the Council when to meet to take this mandatory action, but by the very nature of its purpose, as well as the fact that its time periods are expressed in mere hours, Subsection 3-05(B) contemplates that the Council act with dispatch and without delay.
The Council held a special meeting and acted on February 6, which was the Thursday following the Monday that Snyder left the city and entered the hospital. Unquestionably, the Council performed its duty on that occasion. If the 72 hour absence and disability period was commenced when Snyder left the city and entered the hospital on February 3, then at some time on Thursday, February 6, the Council's duty to take action arose, and its meeting for that purpose on the very same day was certainly done with dispatch and without delay.
The same duty to act with dispatch and without delay is imposed on the City Council when the absence or disability is terminated. Subsection 3-05(B) instructs the Council at that time to so certify by two-thirds vote, and the Mayor will resume his duties. The decision of whether in fact the absence or disability is terminated is, of course, a question that lies within the province of the Council's function to reasonably decide, but the Council cannot unreasonably refuse to act, i.e., meet, on the question itself. Here, it appears to be undisputed that Snyder was back in town when he requested the Council to act; if his absence for 72 hours was alone the basis for the Council's action on February 6, the absence was terminated and the Council had then but to certify that fact for Snyder to resume his duties. On the other hand, if his inability, or disability, to perform the duties of his office was the expressed basis for the resolution of February 6, then his treating physician's written opinion that Snyder was able to perform the duties of his office was sufficient to trigger the ministerial duty to at least meet and decide whether such was in fact the case. The resolution of February 6 is not in evidence. It makes no difference, however, for the record clearly reflects that the refusal to meet and decide, despite some apparent indications that the Mayor could resume his duties, was a failure to perform a ministerial duty.
Appellee's argument in this appeal that the reinstatement of Snyder as Mayor is a discretionary matter, has in it a measure of truth, for the Council when it makes that determination must weigh the evidence in deciding the facts if conflicting evidence exists, but the argument is wrong to describe the decision as one that can be based on purely personal judgments, or unlimited discretion. However, the Council's quasi-judicial latitude in making the decision of whether or not to reinstate is not now before us, nor was it before the district court. The appellee's argument confuses the act of meeting and making a decision with the decision itself. Snyder's initial request in the letter of February 19 was merely that the subject of his reinstatement be put on the agenda. That was not done. At the meeting on February 25, *1149 his attorney asked that the matter be put on the agenda and discussed instanter. That was not done. The mandamus action was then filed to compel the City Council to meet, take up, and decide the issue. This was the ministerial duty that was required to be performed and that the trial judge ordered performed when he made the writ of mandamus peremptory. The trial court made it clear that it was not telling the Council what to decide, but only that it must meet and decide. Said the court:
"[I]t is the opinion of the Court that the Council should act on it in due haste, even to the point of calling a special meeting if necessary and not waiting for an ordinary course of events to take place."
"Certainly no ordinary course of events was permitted to take place when the inability or absence of the Mayor exceeded 72 hours, a special meeting was called at that time. Certainly when it is alleged that these inabilities or absences no longer exist, it is incumbent upon the Council to call a meeting as soon as possible to make a determination of that fact."
We fully agree with these reasons for judgment.
We address, finally, the argument that it was improper for the court to substitute its judgment for that of the City Council. The "judgment" in question is the decision about when to hold the meeting to consider Snyder's reinstatement. This involves a determination of the meaning and intent of Charter Section 3-05. The appellee argues that its interpretation (which is contrary to that of the court) should be favored because it comports with the rule of contemporaneous construction, which is a legal principle that, applied here, would endow persuasive force to evidence that Section 3-05 for a long time had been consistently accorded the interpretation given it by the Council. That rule of construction is not of any use here, however, because so far as the evidence shows, this is the first time the section has needed to be interpreted. There is no showing that it has a history of having been applied in any different sense than given by the court.
One last point needs mention. If a public body had the unlimited authority to delay a meeting to decide reinstatement under provisions like that in this Charter, it would have the power to effectively remove an elected public official from office once there occurred a temporary absence or inability to perform the duties of the office for more than 72 hours. We are certain that it was not the intent of Section 3-05 of the Alexandria City Charter that the Council have such unlimited authority.
We share the trial court's conviction that Snyder has a clear and specific right to be enforced and the City Council has a clear and specific duty to perform. The delay involved in obtaining relief by ordinary process would cause injustice. The mandamus was appropriate.
For these reasons, the decision of the district court is affirmed.
AFFIRMED.