IrPER CURIAM.
This matter comes before us in an unusual procedural posture, pursuant to a transfer of a writ application from the Louisiana Supreme Court “for expedited consideration and action.” Thus we exercise our supervisory jurisdiction to review a trial court judgment granting a preliminary injunction that affects the calling of a special election to fill a vacancy in the office of the associate supreme court justice for the Fourth Supreme Court District.
*539 The district court’s preliminary injunction prohibits the Secretary of State from including the name of any candidate on any ballot for the special or general elections set for November 18, 1995, and December 16, 1995, to fill the vacancy at issue. For reasons we assign, we not only affirm the district court’s judgment, but also hold that, because the scheduled dates violate statutory law, no election to fill the vacancy shall be held on dates other than those provided by the Election Code.
The petitioner herein is Paul Loy Hurd, a duly registered elector of Ouachita Parish. Hurd is qualified to be a candidate for the vacancy and alleges that he is a prospective candidate for that vacant judgeship. After Hurd sought injunctive relief against the Secretary of State and successfully obtained a preliminary injunction, the Governor was allowed to intervene and a hearing was scheduled in the trial court on November 2, 1995, apparently to consider dissolution of the injunction. The Governor then sought writs from the Supreme Court both in this matter and a similar case arising in a parish of another circuit where a preliminary injunction also had been granted stopping the election to fill the vacancy.
laA host of issues have been raised by the parties herein, including the proper characterization of this litigation, the proper party to represent the state’s interest and the applicable statutory and constitutional provisions. However, the real dispute and ultimate issue is the Governor’s power to call the election at the time announced. With less than twenty days until the first election date, and about one week until absentee voting, the urgency of the circumstances mandates immediate resolution of the ultimate issue.
The supervisory jurisdiction of the supreme court and this court is exercised to allow us reach the ultimate issue which concerns the interest of justice regarding a fundamental political (election) process. In Supervisory Powers of the Louisiana Courts of Appeal, 38 Tul.L.Rev. 429 (1964), the late jurist Albert Tate, Jr. illustrated this plenary power by discussing State ex rel. LeBlanc v. Democratic State Cen. Comm., 229 La. 549, 86 So.2d 189 (1956); 229 La. 556, 86 So.2d 192 (1956). As explained by then Judge Tate:
There, upon the application of the relator, the supreme court granted supervisory writs immediately after the suit was filed. The question at issue was whether a statewide second primary was necessary. The supreme court’s supervisory intervention took place even before responsive pleadings were filed in the trial court; the trial court had not yet ruled on this legal question of widespread public concern. However, without this immediate intervention by the appellate court under its supervisory jurisdiction, orderly and timely resolution of a question involving a fundamental political process of the state was otherwise impossible. 38 Tul.L.Rev. at 431.
The matter before us is heavily impressed with the public interest that requires an immediate answer. The Secretary of State has stated that the Election Code requires absentee ballots to be delivered to the registrars of voters at least twenty days before the primary election and that absentee voting begins on November 6, 1995, twelve days before the election. ^Considering the extreme time constraints present, and the fact that we have briefs from all parties asserting their respective positions, we resolve the issue.
Relying upon LSA-Const. Art. 5, § 22(B), the Governor argues that he has the specific authority to call judicial elections, and that the provisions of Art. 5, § 22(B) do not refer to any powers of the legislature to limit that authority. That provision states:
A newly-created judgeship or a vacancy in the office of a judge shall be filled by special election called by the governor and held within twelve months after the day on which the vacancy occurs or the judgeship is established, except when the vacancy occurs in the last twelve months of an existing term.
The Governor further argues that the provisions of LRS 18:402 et seq, relied upon by plaintiff, are inapplicable, contending the Governor has the discretion, but not the obligation, to use the time lines in Title 18 for guidance.
The provisions of LRS. 18:402(E) concern special elections to fill a newly-created office *540 or a vacancy in an office, including a vacancy in a judgeship. See LRS 18:621 quoted infra. The statute sets forth the dates upon which special primary elections and special general elections shall be held, and require the Secretary of State to exclude the name of any candidate on any ballot for a special election to fill a vacancy in any office to which Subsection E is applicable unless the special election has been called in accordance with the provisions of the subsection and scheduled on one of the dates provided therein. Subsection E concludes by stating that any elector who is eligible to vote in any such special election may apply for injunctive relief to prohibit the placing of the name of any candidate on the ballot in an |4improperly-called election. Venue for such an application is the parish in which the election is called, and the Secretary of State shall be the proper party defendant.[1]
IsThe Legislature obviously intended the provisions of R.S. 18:402 to apply to vacan *541 cies in judicial office. This is shown by the provisions of LSA-R.S. 18:621 which state in pertinent part:
A(l). Within 24 hours after having knowledge of a vacancy in the office of a judge, including a vacancy by reason of a newly-created judgeship, the supreme court shall give written notice to the governor that the vacancy exists, the date on which it occurred, and the cause thereof.
(2). If more than 12 months of the term remain unexpired, then within 10 days after being notified of the vacancy, the governor shall determine the dates on which the special elections to fill the vacancy shall be held and the dates of the qualifying period and shall issue his proclamation ordering a special election and specifying the dates on which the primary and general elections will be held and the dates of a qualifying period for the election.
(3). The governor shall call any special election to fill a newly-created judgeship or a vacancy in an existing judgeship in accordance with the dates for elections set forth in R.S. 18:402, if such dates can be utilized to fill a newly-created judgeship or fill a. vacancy in an existing judgeship within the period of time prescribed in Art. V, Section 22(B) of the Louisiana Constitution. In selecting the date for such special elections, the governor shall first choose a gubernatorial or congressional election date; if no such date is available during the constitutionally prescribed time period, the governor shall then select another election date, as provided for in R.S. 18:402.
Because the provisions of 18:621 plainly attempt to link the constitutional provisions relied upon by the Governor with the statutory provisions in Title 18:402, relied upon by the plaintiff, the ultimate question lain this litigation can be succinctly stated as whether the statutory limitations may be read in harmony with the constitutional provisions, or whether the two must be read as conflicting.
By LSA Const. Art. 11, § 1, the legislature is mandated to adopt an election code which shall provide for permanent registration of voters “and for the conduct of all elections.” The constitutional requirement that the legislature adopt an election code strongly indicates that the constitution envisions the legislature enacting a comprehensive set of election laws regulating all elections, including those for a newly established or a vacant judgeship. The constitutional grant of this power in a single sentence indicates the constitutional intent that the legislature have broad powers to legislate the conduct, when and how, of the election process. Our Louisiana Constitution is unlike the Federal Constitution. Legislation not constitutionally prohibited is allowed the legislature. Aguillard v. Treen, 440 So.2d 704 (La.1983); Swift v. State, 342 So.2d 191 (La. 1977).
Because the legislature is entitled to exercise powers not clearly and specifically denied by the constitution, when a court reasonably can do so, it must construe statutes so as to preserve their constitutionality. Matter of American Waste and Pollution Control Company, 580 So.2d 392 (La.App. 1st Cir.1991), reversed on other grounds, 558 So.2d 367 (La.1991). Moreover, under principles of constitutional interpretation, where there are several possible meanings of words of a constitution, a meaning which will defeat rather than effectuate the constitutional purpose cannot rightly be preferred. U.S. v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). In construing constitutional provisions, a court must have recourse to |7the whole instrument, if necessary, to ascertain the true intent of any particular provision, and if there is an apparent repugnancy between different provisions, the court should harmonize them if possible. Meyers v. Flournoy, 209 La. 812, 25 So.2d 601 (1946).
Reading the provisions of LSA-Const. Art. 5, § 22(B) in pari materia with those of Art. 11, § 1, we can ascertain no reason why these provisions should not be construed harmoniously. While Art. 5, § 22(B) designates the Governor as the state official who shall call a special election to fill *542 a vacancy in the office of a judge, the broad grant of constitutional authority under Art. 11, § 1 empowers the legislature to establish time frames within which elections shall be held in order to ensure orderly, economically prudent, and expeditious procedures for the conduct of such an election. The provisions of Title 18 in no way attempt to take away from the Governor the authority to call special elections, and no one is suggesting that the provisions of either R.S. 18:402(E) or 18:621 do not provide for logical, orderly and expeditious procedures for calling a special election to fill a judicial vacancy. Our law suggests no reason why judicial elections should not occur within a time frame that will achieve efficiency and uniformity in the process.
Finally, we observe that under the provisions of Art. 5, § 22(B), no special election is to be called when the vacancy occurs in the last 12 months of an existing term. This time period was increased from the prior constitutional provision in which the time period was 6 months. Thus, there is no need for hastily called special elections.
Because we have determined that LSA-Const. Art. 11, § 1 and LRS 18:402 and 621 are not in conflict with those of Art. 5, § 22(B), we now turn |8to plaintiffs allegations that the date set for the primary and the general election herein violate the provisions of the election code. In this respect, plaintiff alleges:
1. There were less than 12 weeks between the issuance of the modified proclamation of October 5 and the November 18 primary [a violation of 18:402(E)(1) ],
2. There were less than 14 weeks between the October 5 proclamation and the gubernatorial primary on October 21 [a violation of 18:402(E)(1) ], and
3. The declared primary and election dates are inconsistent with the dates in the election code.
Our review of the provisions of Title 18 confirms that plaintiff is correct in asserting that the selected dates are in violation of the election code. Accordingly, we conclude not only that the trial court’s injunction should be affirmed, but also conclude that because the scheduled dates violate statutory law, no election to fill the judicial vacancy can take place on November 18, 1995.

CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed. We declare that the dates set for the special election on November 18, 1995, to fill the vacancy violate statutory law. The governor should select new dates that conform with the provisions of the election code, several of which are available throughout 1996.
SEXTON, J., concurs to assign additional reasons.

. LSA R.S. 18:402, Dates of primary and general elections
E. Special elections to fill newly created office or vacancy in office. An election to fill a newly created office or a vacancy in an existing office, except the office of state legislator or representative in congress, shall be held on the dates fixed by the appropriate authority in the proclamation ordering a special election as follows:
(1)A special primaiy election shall be held on the first of the following days that is not less than twelve weeks after the date on which the proclamation calling the special primary election was issued; however, no special primary election shall be held at the same time as a gubernatorial election if the date of the gubernatorial election is less than fourteen weeks after the date on which the proclamation was issued and, in such case, the special primary election shall be held on the first of the following days after that gubernatorial election:
(a) The second to last Saturday in October, when the special general election is held on the fourth Saturday after the second to last Saturday in October.
(b) The first Saturday in October, when the special general election is held on the first Tuesday after the first Monday in November.
(c) The first Saturday in April, when the special general election is held on the fourth Saturday after the first Saturday in April or on the second Tuesday in March during the presidential election year, if the statewide presidential preference primary election is scheduled on the second Tuesday in March of the presidential election year; however, commencing in 1986 and every fourth year thereafter, this date shall not be applicable in a parish containing a municipality with a population of four hundred sevenly-five thousand or more.
(d) The third Saturday in October, when the special general election is held on the fourth Saturday after the third Saturday in October of 1985 and every fourth year thereafter.
(e)(1) The first Saturday in February of an election year for parish and municipal officers in a parish containing a municipality with a population of four hundred seventy-five thousand or more.
(ii) The first Saturday in February of 1995, except in parishes and municipalities where an election on bonds, taxes, and other propositions or questions has been called and held in January of 1995. Notwithstanding the provisions contained in R.S. 18:467 and 468, the qualifying period for primary elections held on the first Saturday in February of 1995 shall open on the third Monday in December of 1994 and shall close at 5:00 p.m. on the Wednesday following the third Monday in December of 1994.
(2) A special general election shall be held on one of the following days:
(a) The fourth Saturday after the second to last Saturday in October of 1983 and every fourth year thereafter.
(b) The first Tuesday after the first Monday in November of even-numbered years.
(c) The fourth Saturday after the first Saturday in April of any year unless the primaiy election is held on the second Tuesday in March; in such case the general election shall be held on the third Saturday in April; however commencing in 1986 and every fourth year thereafter, this date shall not be applicable in a parish containing a municipality with a population of four hundred seventy-five thousand or more.
(d) The fourth Saturday after the third Saturday in October of 1985 and every fourth year thereafter.
(e)(1) The fourth Saturday after the first Saturday in February in a parish containing a municipality with a population of four hundred seventy-five thousand or more, when the special primary election in such parish and municipality is held on the first Saturday in February of an election year for parish and municipal officers.
(ii) The fourth Saturday after the first Saturday in February of 1995, when the special primary election is held as authorized in R.S. 18:402(E)(l)(e)(ii) on the first Saturday in February of 1995.
(3) The secretary of state shall not include the name of any candidate on any ballot for a special election to fill a vacancy in any office to which this Subsection is applicable unless such special election has been called in accordance with the provisions of this Subsection and scheduled on one of the dates provided herein. Any elector who is eligible to vote in any such special election may apply for injunctive relief *541 to prohibit the placing of the name of any candidate in an improperly called election on the ballot. Venue for such application shall be in any parish in which the election is called, and the secretary of state shall be the proper party defendant.